IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCHILLER GROUNDS CARE, INC., a Pennsylvania corporation, | Case No. _____ |
| Plaintiff, vs. | **COMPLAINT** |
| SOURCEONE, INC., a Nebraska corporation, | **JURY TRIAL DEMANDED** |
| and | |
| BILLY GOAT INDUSTRIES, INC., a Missouri corporation, | |
| Defendants. | |

COMES NOW Plaintiff, Schiller Grounds Care, Inc. ("Schiller"), and brings this antitrust action against Defendants SourceOne, Inc. ("SourceOne"), and Billy Goat Industries, Inc. ("Billy Goat") for damages pursuant to 15 U.S.C. § 15.

In support of this action, Schiller hereby states and alleges as follows:

**JURISDICTION AND VENUE**

1.      Schiller is a Pennsylvania corporation with its principal place of business in Southhampton, Pennsylvania.

2.      SourceOne is a Nebraska corporation with its principal place of business in Lincoln, Nebraska.

3.      Billy Goat is a Missouri corporation with its principal place of business in Lee's Summit, Missouri.

4.      At all relevant times, Schiller, SourceOne, and Billy Goat manufactured walk-behind reciprocating aeration products for sale in the United States and Canada.

5.      The Court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331.

6.      Venue in this Court is proper under Section 12 of the Clayton Act.  *See* 15 U.S.C. § 22; *In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3d Cir. 2004).

7.      The Court may exercise supplemental jurisdiction over Schiller's tortious interference claim against Billy Goat because it arises from the same controversy and shares a common nucleus of operative fact.  *See* 28 U.S.C. § 1367.

## FACTS

### SCHILLER'S MANUFACTURING AGREEMENT WITH SOURCEONE

8.      For many years, Schiller has been in the business of manufacturing grounds care equipment, including walk-behind aeration equipment.  Schiller distributes its walk-behind aeration products with reciprocating crankshafts throughout the United States and Canada, through a network of distributors and dealers.

9.      Before July 2014, SourceOne manufactured its own "Plugr" brand of walk-behind aeration equipment with reciprocating crankshafts and sold the component parts for reciprocating crankshafts in interstate commerce to other manufacturers of aeration equipment, including Schiller.

10.     In November 2012, SourceOne and Schiller executed a Manufacturing Agreement, in which the parties stated their intent to "enter into a long-standing relationship, with SourceOne exclusively manufacturing and or supplying to Schiller and Schiller exclusively purchasing from SourceOne" specified components parts for walk-behind aeration equipment that Schiller manufactures, sells, and distributes, for commercial and home use.  The term of the Manufacturing Agreement was 5 years and expired on December 31, 2017.

11.     The reciprocating crankshaft parts that SourceOne agreed to supply to Schiller represent a technology that provides a competitive advantage to a manufacturer of walk-behind

aeration equipment. SourceOne's parts are unique, patent-protected, and not interchangeable with alternative parts made by other companies.

12.     Schiller made a substantial investment of time and money to incorporate SourceOne's parts into its walk-behind aeration equipment and to market those products.

13.     In the Manufacturing Agreement, Schiller warranted it would not obtain parts that were the same or substantially the same as those SourceOne agreed to supply to Schiller from any other any other source until one (1) year after the Manufacturing Agreement terminated.

14.     In turn, SourceOne agreed to supply parts for a period of two (2) years after the Manufacturing Agreement terminated or expired.

15.     In the Manufacturing Agreement, SourceOne promised:

a.      to sell to Schiller all of its requirements of the parts.

b.      to use its best efforts to manufacture and/or supply high quality, specified parts, which would include "the technology and features that are substantially the same as the parts currently used by and featured by SourceOne in its own aeration products," and to give Schiller an opportunity to obtain parts with significant changes (¶4);

c.      to use its best efforts to continually improve the parts (¶5);

d.      that the price it charged Schiller for its parts "shall be comparable to the lowest prices quoted by SourceOne for substantially similar parts its sells to third parties under comparable conditions and comparable quantities" (¶9); and

e.      that it and its affiliates "shall not, without the prior written consent of Schiller, directly or indirectly, develop, sell, manufacture or distribute aeration products to Home Depot, Sunbelt, United Rentals, or Lesco in the

United States or Canada (the "Business") as long as Schiller or any subsidiary or affiliate of Schiller is conducting such business during the applicable period" (¶14(a)).

16.     SourceOne also acknowledged that Schiller's Business with the companies listed in paragraph 14(a) extended throughout the United States and Canada, that a breach of paragraph 14(a) would cause irrevocable injury to Schiller, and that the damages would impossible to ascertain.

17.     For its part, Schiller agreed:

    a.     "not to source or purchase from any other parties parts meeting the specifications, or substantially similar to the Specifications, without SourceOne's consent *unless* SourceOne is in breach of its obligations hereunder" (emphasis added);

    b.     to order parts from SourceOne only for use on Schiller Products, under its Classen brand, and the products that it manufactured for Lesco, Sunbelt, and Home Depot; and

    c.     to not use SourceOne's parts in Schiller's Ryan brand of products or for products manufactured and sold by other parties.

### SOURCEONE'S ASSET SALE TO BILLY GOAT

18.     In July 2014, less than two years after SourceOne and Schiller executed the Manufacturing Agreement, SourceOne sold its Plugr brand of aeration equipment, and all related intellectual property rights, to Billy Goat through an Asset Purchase Agreement (APA).

19.     In August 2014, Elmer Wessel, SourceOne's President, emailed a Schiller employee that despite SourceOne's "limited potential sale" of "certain assets," SourceOne would

"continue to honor its obligations under the Manufacturing Agreement . . . . We appreciate your business and look forward to our continued relationship."

20.     The Plugr aerators that Billy Goat acquired from SourceOne contain the reciprocating crankshafts that Schiller contracted to obtain from SourceOne (including any subsequent modifications).

21.     Notwithstanding Billy Goat's purchase of the Plugr line, SourceOne remained contractually obligated to fully perform its promises under the Manufacturing Agreement.

22.     Notwithstanding this, the APA placed no restrictions on the companies to which Billy Goat could sell Plugr brand aeration equipment, or on the companies to which Billy Goat could sell its own brand of aeration equipment incorporating SourceOne's patented reciprocating crankshaft parts.

23.     As part of the asset sale, Billy Goat included terms in the APA that provided SourceOne an incentive and caused, directly and indirectly, SourceOne not to perform its obligations under the Manufacturing Agreement.

**COUNT ONE – VIOLATION OF SECTION ONE OF THE SHERMAN ACT**

24.     Schiller incorporates paragraphs 1 through 23 above as though set forth fully herein.

25.     Section 1 of the Sherman Act, 15 U.S.C. § 1, proscribes concerted action, through contracts or otherwise, to unreasonably restrain trade or commerce among the several states or with foreign nations.

26.     Before SourceOne and Billy Goat entered into the APA, they both directly competed with Schiller in the manufacturing and distribution of aeration equipment.

27.     As a result of the APA, however, SourceOne ceased being a competitor, and its market share transferred to Billy Goat.

28.     SourceOne knew that the terms of the APA would cause Schiller to lose access to the essential parts SourceOne had previously found profitable to supply to Schiller, and that these parts could not be sourced elsewhere.

29.     SourceOne, for its own financial benefit, acted in concert with Billy Goat to cut off Schiller's access to parts essential to Schiller's business.  The APA constituted a concerted refusal to deal with Schiller that serves no legitimate competitive purpose.  It is therefore per se illegal, as a naked restraint of competition, and equally unlawful under a rule of reason analysis.

30.     Because of SourceOne and Billy Goat's illegal boycott of Schiller, Schiller has been damaged and will continue to incur additional damage.  It cannot obtain the parts that it needs to continue manufacturing its walk-behind reciprocating aeration products.  It will incur costs to engineer an alternative technology that does not infringe the patents that Billy Goat acquired from SourceOne and to incorporate that technology into its products.  It has lost the benefit of its investment in SourceOne's parts, and it has lost market share and profits due to the reduced demand for its products.

**COUNT TWO – VIOLATION OF SECTION TWO OF THE SHERMAN ACT**

31.     Schiller incorporates paragraphs 1 through 30 above as though set forth fully herein.

32.     Section 2 of the Sherman Act, 15 U.S.C. § 2, proscribes independent or concerted action to monopolize or attempt to monopolize any part of the trade or commerce among the several states or with foreign nations.

33.     SourceOne, for its own financial benefit, assented to anticompetitive and exclusionary conduct, which allowed Billy Goat to corner the market for reciprocating aeration products and created a dangerous probability that Billy Goat will obtain monopoly power for these products sold in the United States and Canada.  SourceOne knew Billy Goat intended to

acquire monopoly power through exclusionary terms of the APA, and SourceOne knew the parts were essential to effective competition in the reciprocating aeration market.

34.     SourceOne's sale of the Plugr product line almost immediately made Billy Goat one of the largest manufacturers and distributors of aeration equipment in the United States, and simultaneously eliminated SourceOne as a competitor.  In October 2014, Billy Goat announced that with its Plugr acquisition, it would offer the most comprehensive group of aerators in the U.S. Market.

35.     SourceOne and Billy Goat conspired to prevent Schiller from obtaining the essential parts it needs to compete in this market and to give Billy Goat exclusive access to reciprocating crankshaft parts.  These actions have already reduced the number of walk-behind aeration products available to consumers in the concentrated walk-behind reciprocating aeration market because Schiller can no longer produce as many products and will soon be unable to produce any of these products.

36.     Billy Goat has obtained substantial market power through the terms of the APA and will continue to do so through exclusionary conduct that has no purpose other than to suppress or destroy competition.

37.     The APA terms shows that there will impossible entry barriers to other competitors for many years and that Billy Goat already has a significant cost advantage that it can exploit.  Its exclusionary conduct shows that it likely to use this advantage to gain monopoly power.

38.     Because of SourceOne and Billy Goat's concerted action to monopolize or attempt to monopolize the walk-behind reciprocating aeration product market in the United States and Canada, Schiller has been damaged and will continue to incur additional damage.  It

has lost the benefit of its investment in SourceOne's parts, and it has lost market share and profits due to the reduced demand for its products.

## COUNT THREE – VIOLATION OF SECTION SEVEN OF THE CLAYTON ACT

39.     Schiller incorporates paragraphs 1 through 38 above as though set forth fully herein.

40.     Section 7 of the Clayton Act, see 15 U.S.C. § 18, precludes any asset acquisition when "the effect of such acquisition may be to substantially lessen competition, in a market or to tend to create a monopoly."

41.     The terms of the APA intended to cause Schiller to lose access to parts that were essential to Schiller's ability to compete in the market for walk-behind reciprocating aeration products in the United States and Canada.  SourceOne and Billy Goat knew that Schiller could not obtain these parts from any other supplier.

42.     Through the asset purchase agreement, Billy Goat has cornered the market in the walk-behind reciprocating aeration product market.  Because of the terms of the APA, Billy Goat's competition from rivals has already substantially lessened, the market for reciprocating aerators has become more concentrated, and Billy Goat's own market share will continue to rise. These conditions are sufficient to show that Billy Goat's asset acquisition will substantially lessen competition and tend to create a monopoly.

43.     Because of the exclusionary terms of the Billy Goat's purchase of SourceOne's assets, Schiller has been damaged and will continue to incur additional damage.  It cannot obtain the parts that it needs to continue manufacturing its walk-behind reciprocating aeration products. It will incur costs to engineer an alternative technology that does not infringe the patents that Billy Goat acquired from SourceOne and to incorporate that technology into its products.  It has

lost the benefit of its investment in SourceOne's parts, and it has lost market share and profits due to the reduced demand for its products.

## COUNT FOUR -- TORTIOUS INTERFERENCE IN A BUSINESS RELATIONSHIP AND EXPECTANCY

44.     Schiller incorporates paragraphs 1 through 43 above as though set forth fully herein.

45.     Billy Goat's asset purchase agreement with SourceOne from July 2014 shows that Billy Goat knew Schiller had a Manufacturing Agreement with SourceOne and knew that it had not expired.  It also shows that Billy Goat knew that Schiller had a valid and identifiable business expectancy.  SourceOne and Schiller stated their intent to maintain a long relationship in the declarations of the Manufacturing Agreement, and Billy Goat knew that the reciprocating crankshaft parts that SourceOne sold to Schiller were unique, patent-protected, and not interchangeable with alternative parts made by other companies.  Billy Goat had no reason to believe that Schiller would not want to continue its business relationship with SourceOne to obtain these parts.

46.     Billy Goat intentionally and unjustifiably interfered with Schiller's existing contractual relationship with SourceOne and with Schiller's expectancy that this relationship would continue.

47.     Billy Goat conditioned its purchase of SourceOne's Plugr product line on SourceOne's assent to terms that would foreseeably breach the Manufacturing Agreement and Schiller's justified expectations therein.

48.     Cutting off Schiller's supply of parts from SourceOne was a primary motivation for Billy Goat's conduct, and its interference in Schiller's business relationship and expectancy was improper.

49.     Because of Billy Goat's interference in Schiller's contractual relationship with SourceOne and in Schiller's valid expectancy of a continued business relationship with SourceOne, Schiller has been damaged and will continued to incur additional damage.  It has lost access to supplies that are essential to its competitiveness in the walk-behind reciprocating aeration products market.  It will incur costs to engineer an alternative technology that does not infringe the patents that Billy Goat acquired from SourceOne and to incorporate that technology into its products.  It has lost the benefit of its investment in SourceOne's parts, and it has lost market share and profits due to the reduced demand for its products.

**ATTORNEY FEES AND COSTS**

50.     Pursuant to 15 U.S.C. § 15, Schiller requests that the Court award to it the attorney fees, costs, and expenses that it has incurred in prosecuting this action.

**JURY DEMAND**

51.     Schiller demands a trial by jury on the allegations made in this complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Schiller respectfully prays for judgment on one or more of its claims against the Defendants as set forth herein, and for treble damages as provided under 15 U.S.C. § 15.  Moreover, unless Billy Goat is restrained, competition in the walk-behind reciprocating aeration market will continue to be harmed by the exclusionary conduct that was implemented through the terms of Billy Goat's purchase of SourceOne's assets.  Schiller therefore asks the Court for a remedy of divestiture or such other equitable relief that the court deems just and proper.


DATED this _____ day of October, 2018.

SCHILLER GROUNDS CARE, INC.,
Plaintiff,


By:    <u>s/ John D. Simmons</u>
John D. Simmons (Bar No. 202,405)
Keith Jones (Bar No. 313,116)
PANITCH SCHWARZE BELISARIO &
NADEL
Two Commerce Square
2001 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: (215) 965-1330
Fax: (215) 965-1331
jsimmons@panitchlaw.com
kjones@panitchlaw.com

Brian J. Brislen (*pro hac vice to be filed*)
Cathy S. Trent-Vilim (*pro hac vice to be filed*)
LAMSON, DUGAN & MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
Tel: (402) 397-7300
Fax (402) 397-7824
bbrislen@ldmlaw.com
ctrent-vilim@ldmlaw.com
*Attorneys for Plaintiff*

#